IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA

PENNY NEWMAN GRAIN COMPANY,   )      No. CV-F-06-1020 OWW/DLB
                             )
                             )      MEMORANDUM DECISION GRANTING
                             )      THIRD-PARTY DEFENDANT
              Plaintiff,     )      NORBERG PAINTS, INC.'S
                             )      MOTION TO DISMISS MIDWEST
        vs.                  )      PAINT SERVICES, INC.'S
                             )      AMENDED THIRD PARTY
                             )      COMPLAINT PURSUANT TO FED.
MIDWEST PAINT SERVICES, INC.,)      R.CIV.P. 12(b)(2) (Doc. 33)
et al.,                      )
                             )
                             )
              Defendant.     )
                             )
_____)

        Plaintiff Penny Newman Grain Co., Inc. (Penny Newman) has

filed a First Amended Complaint for Breach of Contract,

Negligence and Breach of Express Warranty (FAC).  Named as

defendants are Midwest Paint Service, Inc. (Midwest), ICI Paints

(ICI), and Does 1-100.  The FAC alleges that Penny Newman and

Midwest entered into a Painting Contract in June 2003 under which

Midwest agreed to provide the labor, supplies, insurance,

equipment and tools necessary to prepare, patch and paint a

storage facility consisting of concrete silos in Stockton,

California (the Stockton Facility) for the sum of $336,500; that

Midwest began the process of preparing and repainting the

Stockton Facility in August 2003; that Midwest finished working

on the Stockton Facility in January 2004; that Midwest

negligently prepared the surface of the Stockton Facility and

1

1  painted and/or selected a paint wholly unsuitable for the

2  Stockton Facility; and that, as a result of Midwest's conduct,

3  large sections of the paint failed to adhere, resulting in

4  blistering, flaking and stripping of the paint from the surface

5  of the Stockton Facility.

6      Midwest has filed an Amended Third Party Complaint (TPC)

7  against Norberg Paint Services, Inc. (Norberg), alleging claims

8  for negligent misrepresentation and indemnity and contribution.

9  The TPC alleges that Norberg is liable to Midwest for the

10 liability that Midwest may owe to Penny Newman because of

11 negligent misrepresentations, contribution, equitable indemnity,

12 and apportionment of fault.  Based on information and belief, the

13 TPC alleges that Norberg is a South Dakota corporation, with its

14 principal place of business in Sioux Falls, South Dakota; that

15 Norberg is a paint products retailer who sells, among other

16 products, Devoe paint products including Devoe Hydrosealer and

17 Devoe Hi-Build Acrylic paint; that Norberg has sold paint and

18 paint products to Midwest which Norberg knew would be used in

19 locations outside of South Dakota in the usual course of its

20 business; and that Norberg either regularly shipped or arranged

21 for shipping of paint products to be used outside South Dakota.

22 (TPC, ¶ 6).  The TPC further alleges that Midwest contracted with

23 Penny Newman to paint the grain storage facility in Stockton,

24 California; that Midwest consulted with Norberg about the proper

25 type of paint for painting the grain storage facility before it

26 undertook any work; and that this consultation included requests

for information as to the proper preparation products and/or procedures, and paint for painting the grain storage facility. (TPC ¶ 7). Midwest further alleges that Norberg represented to it that Devoe Hydrosealer and Devoe Hi Build Acrylic would be adequate to prepare and paint the grain storage facility; that Norberg's representations "were done with the intent of causing effects in the California [sic], and/or not done with the intention of causing effects in California, but cold reasonable [sic] have been expected to do so"; that Midwest consulted with Norberg when the paint on the grain storage facility began to fail, after which Norberg made representations to Midwest that the products it had sold to Midwest were adequate and that the preparation of the job being done by Midwest was adequate. (TPC ¶ 8). The TPC alleges that Norberg had a duty to communicate accurate information concerning the preparation and adequacy for use of the paint products it sold to Midwest; that Norberg's representations were made without any reasonable basis for believing them to be true and with the intent to induce Midwest's reliance; that Norberg's representations to Midwest conveyed in Midwest's proposal to Penny Newman induced Penny Newman to accept Midwest's proposal; that Midwest was unaware of the falsity of Norberg's representations; and that Norberg's misrepresentations proximately caused damage to Midwest.

Norberg moves to dismiss the TPC pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of *in personum* jurisdiction.

3

A.   <u>GOVERNING STANDARDS</u>.

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002).  If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  *Id.*  In such cases, the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction."  *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995).  Although the plaintiff cannot "'simply rest on the bare allegations of its complaint,' ..., uncontroverted allegations in the complaint must be taken as true." *Dole Foods Co., Inc.*, *id.*  "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor."  *Id.*

Personal jurisdiction exists if permitted by California's long-arm statute and federal due process.  Pursuant to Cal. Code of Civ. P. § 410.10, California's long-arm statute reaches as far as the Due Process Clause permits.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998).  For a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have at least "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."

4

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Two categories of jurisdiction exist: general or specific jurisdiction. *See Lake v. Lake*, 817 F.2d 1416, 1420-21 (9th Cir. 1987). Midwest concedes that general jurisdiction does not exist. At issue in this motion is specific jurisdiction.

A court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.,* it must be reasonable.

*Dole Foods, supra*, 303 F.3d at 1104. The plaintiff bears the burden of satisfying the first two prongs of this test. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-478 (1985). Courts examine the defendant's contacts with the forum at the time of the events underlying the dispute. *See Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987).

5

As explained in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004):

> We often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction ..., but availment and direction are, in fact, two distinct concepts. A purposeful availment analysis is most often used in suits sounding in contract ... A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.

Here, because Midwest's claims against Norberg are based on negligence, the purposeful direction analysis is appropriate.

In *Dole Foods Co. supra*, 303 F.3d at 1111, the Ninth Circuit stated:

> Under our precedents, the purposeful direction ... requirement is analyzed in intentional tort cases under the 'effects' test derived from *Calder v. Jones*, 465 U.S. 783 ... (1984). In *Calder*, the Supreme Court determined that California courts could exercise jurisdiction over an editor and a reporter who caused a defamatory article about a California resident to be published in Florida and circulated in California, on the ground that the tortious conduct was 'expressly aimed' at the forum state in which the harm occurred ... As we have previously recognized, *Calder* stands for the proposition that purposeful availment is satisfied even by a defendant 'whose only "contact" with the forum state is the "purposeful direction" of a foreign act having an effect in the forum state.' ... Based on these interpretations of *Calder*, the 'effects' test requires that the defendant allegedly have (1) committed an intentional act; (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state ....

"The second prong of the specific jurisdiction test

(litigation must "arise out of or relate to those activities") is met if, "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385-386 (9th Cir.1990) (citations omitted), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

The third prong of the test, reasonableness, is presumed once the court finds purposeful direction: "[w]e presume that an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard v. Savage*, 65 F.3d 1495, 1500 (1995) citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir.1990)(once court finds purposeful availment, it must presume that jurisdiction would be reasonable).  The burden of proving unreasonableness shifts to defendant.  *Ballard*, 65 F.3d at 1500.

Ninth Circuit law formerly required a plaintiff to demonstrate each of the three factors to establish specific jurisdiction (*see Data Disc, Inc. v. Sys. Tech. Assoc.*, 557 F.2d 1280, 1287 (9th Cir.1977)).  A more flexible approach, however, has since been adopted.  *Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182, 1188 (9th Cir.2002), citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074 (9th Cir.1986).  "Jurisdiction may be established with a lesser showing of minimum contacts 'if considerations of reasonableness dictate.'" Ochoa, 287 F.3d at 1189 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir.1986); *see also Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  "Activity by the defendant need not physically take place in the forum state so as to constitute sufficient contact under the due process test ... The Supreme Court has consistently rejected the notion that absence of physical contacts with a forum state can defeat personal jurisdiction, '[s]o long as a commercial actor's efforts are purposefully directed toward residents of another State.'" *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir.1986) citing *Burger King*, 471 U.S. at 475-477; *see also Calder v. Jones*, 465 U.S. at 790.  On the other hand, "both [the Ninth Circuit Court of Appeals] and the courts of California have concluded that ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1272 (9th Cir.1985) (finding defendant's two foreign-mailed cease and desist letters, dealing with plaintiff's potential patent infringement actions, insufficient to create personal jurisdiction in the forum state) (citing *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir.1980); *see also Floyd J. Harkness Co. v. Amezcua*, 60 Cal.App.3d 687, 692-93, (1976); *Interdyne Co. v. SYS Computer Corp.*, 31 Cal.App.3d 508, 511-12 (1973)).

"In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones*, *supra*, 465 U.S. at 788-89.  "The

plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction." *Calder v. Jones*, *id.*

"Questions of personal jurisdiction admit of no simple solutions and that ultimately due process issues of reasonableness and fairness must be decided on a case-by-case basis." *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir.1978) citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952).

    **B.**   <u>FACTUAL BACKGROUND</u>.

In moving for dismissal for lack of personal jurisdiction, James Norberg, co-manager and co-owner of Norberg Paints, Inc., avers in pertinent part:

> 2. Norberg is a retailer of paint and paint products incorporated under the laws of South Dakota. Norberg's principal place of business is in Sioux Falls, South Dakota and has been for the entire 121 years of Norberg's existence.

> 3. Norberg is family-owned and operates a single store which is located at 326 East 14th Street, Sioux Falls, South Dakota. Norberg employs six employees.

> 4. Norberg has never conducted business in California and has never been licensed to do so.

> 5. Norberg is not registered to do business in California and has not designated an agent for service of process in California.

> 6. Norberg does not own any property in California.

> 7. Norberg does not advertise in California, it does not conduct any business operations in California and it does not have any employees in California.

8.   Norberg has no customers in California.

9.   Norberg has never directly sold any paint or paint products to any customer in California.

10.   Norberg has never actively solicited business in California.

11.   Norberg has never developed a sales force in California.

12.   Norberg has never retained any California-based marketing company.

13.   Norberg has never been listed in any California telephone directory.

14.   Norberg has no California bank accounts.

15.   Norberg does not operate and has never operated any kind of Internet website.

16.   The paint sale between Norberg and Midwest occurred at the Sioux Falls, South Dakota store.  At the request of Midwest, the paint manufacturer - The Glidden Company, dba ICI Paints - shipped the product to Stockton, California.  Norberg did not ship the paint to California.

17.   Norberg was not a party to the Penny Newman/Midwest painting contract.

18.   No one from Norberg ever visited California or Penny Newman's Stockton Facility.

19.   Norberg did not participate in the Penny Newman paint job.

20.   California is not a convenient forum for Norberg or its employees.  Litigating this matter in California would impose an unreasonable burden on Norberg and its employees due to the anticipated travel time and cost, the disruption of Norberg's business operations, and the inconvenience for Norberg's employees who would need to travel to California to defend this lawsuit.

21.   Traveling to California from Sioux
Falls, South Dakota would require at least
two days of travel.   Because of travel time,
each appearance in California would require
an employee to miss a minimum of three days
of work – two days for travel and a minimum
of one day for the appearance.   As a small
business with only six employees, an
employee's absence from the store
substantially disrupts the day-to-day
operations and creates scheduling conflicts.
If these absences involve Norberg's key
personnel, their absence will have an adverse
effect on Norberg's paint sales and its
income.

In opposition, Midwest submits the declarations of Craig
Bower and Dennis Lingren.   Bower, the founder and CEO of Midwest,
avers:

2.   MIDWEST has purchased paint products in
the regular course of business directly from
NORBERG ... for the at least the [sic] past
15 years.   NORBERG and MIDWEST had agreed to
at a [sic] price schedule at the beginning of
nearly every year to facilitate said
purchases.

3.   These products MIDWEST has purchased from
NORBERG have been for painting jobs through
out [sic] the United States including some in
California, making MIDWEST a California
customer of NORBERG.

4.   I have never had any discussion with
NORBERG's employees, including James Norberg,
refusing to sell MIDWEST paint products for
use outside South Dakota.

5.   I am informed and believe all of
MIDWEST's dealings with recommendations to
cure the problems at PENNY NEWMAN's Stockton
Facility had been directed to NORBERG, and
NORBERG made recommendations on the curative
measures to be taken.

Dennis Lindgren, an employee of Midwest, avers in pertinent part:

2.   As part of my job duties at MIDWEST, I

11

ordered paint products from NORBERG ... for painting through out [sic] the United States, including more than one job in California, which included PENNY NEWMAN['s] ... Stockton facility.

3.  I also spoke with NORBERG employees on more than one occasion who made representations about the suitability of the paint products sold for painting PENNY NEWMAN's Stockton Facility.

4.  I also spoke with NORBERG employees about the suitability of the paint products and MIDWEST's preparation efforts for the paint after MIDWEST had sent samples of the existing paint at PENNY NEWMAN's Stockton facility to NORBERG for review.  During these conversations NORBERG's employees made representations on how to apply the paint as well as the appropriateness of the paint for its known applications while the work was being done in California.

C.  <u>MERITS OF MOTION</u>.

1.  <u>Purposeful Direction</u>.

Norberg argues that it's sale of paint to another South Dakota company in South Dakota satisfies the purposeful direction requirement, even accepting that Midwest advised Norberg of its intent to use the paint for a job in California.

Norberg relies primarily on *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir.1986).

In *Brand*, Menlove Dodge, an auto dealership in Utah, bought a used 1979 Toyota landcruiser from another dealer and promply resold it.  Several months later, the purchaser returned the vehicle to Menlove upon discovering that the front-end assembly had been replaced with a front end from a 1972 model.  Menlove then sold the vehicle to Patterson, a Utah used car dealer.

12

Patterson sold the vehicle at the Los Angeles Auto Auction to Murray Brand, a Phoenix auto dealer.  Brand sold it in Arizona. Brand's customer had problems with the front end and the wheels of the vehicle broke apart.  Litigation between the purchaser and Brand resulted in jury verdict against Brand.  Brand then filed suit in Central District of California against Menlove, Patterson, and the Los Angeles Auto Auction.  Menlove did not appear and a default judgment was entered against it on fraud and negligence claims and compensatory and punitive damages were awarded.  On appeal, the Ninth Circuit held that the district court did not have personal jurisdiction over Menlove.  With regard to the purposeful availment requirement, the Ninth Circuit held:

> Central to Brand's case is his allegation that Menlove sold the Toyota to Patterson knowing it would be resold in California. The alleged conduct places this case neatly between *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 ... (1980) and *Plant Food Co-op v. Wolfkill Feed & Fertilizer*, 633 F.2d 155 (9th Cir.1980).  In *World-Wide Volkswagen*, defendant auto dealer sold a defective car to New York residents in New York.  The car caused injuries to plaintiffs in Oklahoma, and they sued in Oklahoma court. The Supreme Court held that Oklahoma courts did not have jurisdiction over the auto dealer or its distributor based on the sale of the car, even though it was foreseeable that the car might be driven in Oklahoma. 444 U.S. at 296 ... The court set out the standards for asserting jurisdiction in product defect cases:
>
>> [I]f the sale of a product of a manufacturer or distributor ... is not simply an isolated occurrence, but arises from the efforts of the

13

> manufacturer or distributor to
> serve, directly or indirectly, the
> market for its product in other
> States, it is not unreasonable to
> subject it to suit in one of those
> States if its allegedly defective
> merchandise there has been the
> source of injury to its owner or
> others.  The forum State does not
> exceed its powers under the Due
> Process Clause if it asserts
> personal jurisdiction over a
> corporation that delivers its
> products into the stream of
> commerce with the expectation that
> it will be purchased by customers
> in the forum State.

*Id.* at 297-98 ... The court emphasized that there was no evidence that the autos sold by the distributor were sold outside the New York-Connecticut area.  *Id.* at 298 ....

In *Plant Food*, a Canadian fertilizer distributor, acting on orders received from Washington middlemen, shipped defective fertilizer to the plaintiff in Montana.  We found that the Montana court had jurisdiction and distinguished *World-Wide Volkswagen* because the fertilizer distributor 'engaged in affirmative conduct to deliver its product to Montana.'  633 F.2d at 159.  Defendant's contact with Montana was voluntary and financially beneficial to it.  *Id.*  'When it knew the fertilizer was bound for Montana, [the defendant] could have objected or made other arrangements if it found exposure to Montana's long-arm jurisdiction unacceptable.'  *Id.*

This case falls somewhere between these precedents.  Unlike the *Plant Food* defendant, Menlove took no affirmative action to send the Toyota to California; the decision to resell the vehicle in that state was the unilateral act of a third party.  *See Burger King*, 105 S.Ct. at 2183.  Moreover, it seems to place an unnecessarily large burden on local distributors to say that if Menlove wanted to avoid jurisdiction in California, it should not have sold the Toyota to

14

> Patterson once he announced his intent to
> resell in that state.  On other hand, unlike
> the defendants in *World-Wide Volkswagen*,
> Menlove allegedly had explicit knowledge that
> the car would be resold in California, and
> arguably delivered it into the stream of
> commerce with the expectation that it would
> be purchased by California consumers.
>
> Because Menlove did not engage in affirmative
> conduct to deliver its product to California,
> but rather passively made a sale it allegedly
> knew would affect that state, we conclude
> that Menlove did not direct its activities
> purposefully at California so as to create a
> presumption of reasonableness of jurisdiction
> in the California courts.  However, since
> Menlove did know that its activities would
> affect California interests to some extent,
> we conclude that this case falls into the
> category suggested in *Haisten*, where personal
> jurisdiction may be established on a lesser
> showing of minimum contacts with the state
> 'if considerations of reasonableness
> dictate.'  784 F.2d at 1397.

Norberg argues that, as in *Brand*, it only passively made a sale of paint to Midwest.  Midwest requested that the paint be shipped to California and it was the paint manufacturer, ICI, who shipped the paint to California.

In opposition, Midwest primarily relies on *Calder v. Jones*, *supra,* 465 U.S. 783.

In *Calder*, Shirley Jones, a professional entertainer who lived and worked in California and whose television career was centered in California, brought suit in California Superior Court, alleging that she had been libeled in an article written and edited by petitioners, Florida residents, in Florida and published in the National Enquirer, a national magazine having its largest circulation in California.  The Supreme Court held:

15

The allegedly libelous story concerned the
California activities of a California
resident.  It impugned the professionalism of
an entertainer whose television career was
centered in California.  The article was
drawn from California sources, and the brunt
of the harm, in terms both of respondent's
emotional distress and the injury to her
professional reputation, was suffered in
California.  In sum, California is the focal
point both of the story and of the harm
suffered.  Jurisdiction over petitioners is
therefore proper in California based on the
'effects' of their Florida conduct in
California.  *World-Wide Volkswagen Corp. v.
Woodson*, 444 U.S. 286, 297-298 ....

Petitioners argue that they are not
responsible for the circulation of the
article in California.  A reporter and an
editor, they claim, have no direct economic
stake in their employer's sales in a distant
State.  Nor are ordinary employees able to
control their employer's marketing activity.
The mere fact that they can 'foresee' that
the article will be circulated and have an
effect in California is not sufficient for an
assertion of jurisdiction.  *World-Wide
Volkswagen Corp. v. Woodson*, *supra*, at 295
... They do not 'in effect appoint [the
article their] agent for service of process.'
*World-Wide Volkswagen v. Woodson*, *supra*, at
296.  Petitioners liken themselves to a
welder employed in Florida who works on a
boiler that subsequently explodes in
California.  Cases which hold that
jurisdiction will be proper over the
manufacturer ... should not be applied to the
welder who has no control over and derives no
direct benefit from his employer's sales in
that distant State.

Petitioner's analogy does not wash.  Whatever
the status of their hypothetical welder,
petitioners are not charged with mere
untargeted negligence.  Rather, their
intentional, and allegedly tortious, actions
were expressly aimed at California.
Petitioner South wrote and petitioner Calder
edited an article that they knew would have a
potentially devastating impact upon

16

respondent.  And they knew that the brunt of
the injury would be felt by respondent in the
State in which she lives and works and in
which the National Enquirer has its largest
circulation.  Under the circumstances,
petitioners must 'reasonably anticipate being
haled into court there' to answer for the
truth of the statements made in their
article.

**465 U.S. at 788-790.**

Midwest argues that, like the petitioners in *Calder*,
Norberg's employees "intentionally made" statements about the
suitability of the paint preparation and products they knew would
have an effect in California.  Unlike the defendant in *Brand*,
Midwest contends, Norberg took affirmative action by arranging
for the paint's arrival in California for use on Penny Newman's
facility and reviewed samples of the existing paint shipped to
South Dakota and made affirmative misrepresentations to Midwest's
employees about how to apply the paint and the appropriateness of
the paint while the work was being done in California.

Norberg argues that *Calder* has no application to the
resolution of this motion because it is used in cases involving
intentional torts against international or national defendants
where the brunt of the harm is felt in the forum state.

"Based on these interpretations of *Calder*, the 'effects'
test requires that the defendant allegedly have (1) committed an
intentional act, (2) expressly aimed at the forum state, (3)
causing harm that the defendant knows is likely to be suffered in
the forum state."  *Dole Food Co., supra*, 303 F.3d at 1111.  With
regard to the requirement of an "intentional act", the Ninth

17

Circuit explained in *Schwarzenegger v. Fred Martin Motor Co.*, *supra,* 374 F.3d at 806:

> ... 'Intentional act' has a specialized meaning in the context of the *Calder* effects test.  We have generally applied the 'intentional act' test to actions sounding in tort ... The Restatement (Second) of Torts defines 'act' as follows:
>
> > The word 'act' is used throughout the Restatement [] to denote an external manifestation of the actor's will and does not include any of its results, even the most direct, immediate, and intended.
>
> *Id*. § 2 (1964).  'Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger and not the impingement of the bullet upon the other's person.'  *Id*. § 2 cmt. c.  We construe 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result on consequence of that act.  (The result or consequence of the act is relevant, but with respect to the third part of the *Calder* test - 'harm suffered in the forum.')

Norberg argues that *Calder*'s "effects" test does not apply because Midwest does not claim that Norberg committed an intentional tort and because Norberg is a small local South Dakota company.

Norberg further argues that, even if *Calder*'s effects test applied, it would not create specific personal jurisdiction in California because of the lack of an alleged intentional act and the lack of any economic damage to Midwest in California.  Citing *Dole Food Co., Inc.*, *supra*, 303 F.3d at 1113, Norberg asserts

18

that, for jurisdictional purposes, corporations like Midwest are deemed to have suffered economic harm at the location of the alleged "bad act" or the corporation's principal place of business, both of which are in South Dakota.

In *Dole Food Co.*, 303 F.3d at 1112-1113, the Ninth Circuit discussed the apparent conflict in its cases concerning the test for determining the factor of causing harm in the forum state. One line of cases requires that the "brunt of the harm" be suffered in the forum state, *id.*, citing *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir.1993), while the other line of cases found jurisdiction even though the bulk of the harm occurred outside of the forum state, *id.*, citing *Keeton v. Hustler Magazine*, 465 U.S. 770, 780 (1984)(dissenting opinion). *Dole Food Co.* concluded that, under either test, Dole suffered sufficient economic harm in California to give rise to jurisdiction in California. *Id.* at 1113. The Ninth Circuit stated in pertinent part: "Our precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Id.* In *Yahoo! v. La Ligue Contre le Racisme*, 433 F.3d 1199 (9th Cir.), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2332 (2006), the Ninth Circuit held:

> In this circuit, we construe *Calder* to impose three requirements: 'the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' *Schwarzenegger*, 374 F.3d at 803 ... In some

of our cases, we have employed a slightly different formulation of the third requirement, specifying that the act must have 'caused harm, *the brunt of which is suffered* and which the defendant knows is likely to be suffered *in the forum state.*' *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1987 (9th Cir.2000) ... The 'brunt' of the harm formulation originated in the principal opinion in *Core-Vent Corp. v. Nobel Indus. AR,* 11 F.3d 1482 (9th Cir.1993).   That opinion required that the 'brunt' of the harm be suffered in the forum state; based on that requirement, it concluded that there was no purposeful availment by the defendant.  *Id.* at 1486.  A dissenting judge would have found purposeful availment.  Relying on the Supreme Court's opinion in *Keeton v. Hustler Magazine*, 465 U.S. 770 ... (1984), he specifically disavowed the 'brunt' of harm formulation. *Core-Vent*, 11 F.3d at 1492 (Wallace, C.J., dissenting)('[T]he Supreme Court has already rejected the proposition that the brunt of the harm must be suffered in the forum.'). Without dissenting the disputed 'brunt' of the harm formulation, a concurring judge agreed with the dissenter that purposeful availment could be found.  *Id.* at 1491. (Fernandez, J., concurring)

We take this opportunity to clarify our law and to state that the 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state.  In so stating we are following *Keeton*, decided the same day as *Calder*, in which the Court sustained the exercise of personal jurisdiction in New Hampshire even though '[i] is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire.' 465 U.S. at 780 ....

This is a close question because of the evidence that Norberg, with knowledge that Midwest's job was in California,

affirmatively represented to Midwest that the paint was suitable for the Penny Newman job and that Norberg, after being sent a sample of the surface being painted, again advised Midwest that the paint was suitable.  This evidence distinguishes the authorities relied upon by Norberg in contending that it passively sold the paint to Midwest.  Norberg was told of the job location, the structure and surface to be painted, and knew that the paint was to be applied and was to cover a silo in Stockton, California.  Midwest has established the purposeful direction prong of the specific personal jurisdiction test.

        2.  <u>"But For" Factor</u>.

     Midwest argues that this factor is satisfied because Midwest would not have suffered the loss alleged by Penny Newman "but for" Norberg's misrepresentations about the suitability of the paint for the job that were made after the start of the project when Midwest re-contacted Norberg about the paint problems experienced in California and sent Norberg a piece of failed paint.

     Norberg relies primarily on *Scott v. Breeland*, 792 F.2d 925 (9th Cir.1986) in arguing that this factor is not satisfied. In *Scott v. Breeland*, a flight attendant was allegedly assaulted by a member of a music group, the Oak Ridge Boys, on board the airplane.  She and her husband sued the Oak Ridge Boys and the band member who had committed the assault in the Central District of California.  The District Court dismissed the action for lack of personal jurisdiction and the Ninth Circuit affirmed, holding

that the fact that some members of the Oak Ridge Boys changed

planes in San Francisco on the date of the alleged assault was

insufficient to support the exercise of specific jurisdiction

over the Oak Ridge Boys.  The Ninth Circuit held in pertinent

part:

> ... [F]or specific jurisdiction to lie, the
> Scotts' cause of action must arise out of or
> result from the defendants' California
> activities.  The Scotts' claims against The
> Oak Ridge Boyes, Inc., alleging negligence in
> employing Breeland and ratification of
> Breeland's acts, do not 'arise[] out of or
> result[] from' the plane-changing in
> California by some members of the group or
> sale of records in California.

792 F.2d at 928-929.

Relying on *Scott*, Norberg argues that Midwest's claims arise

out of and relate only to Norberg's activities outside

California:

> Midwest's claims cannot arise from Norberg's
> California-related activities because none
> exist.  Not only does Norberg conduct no
> business in California, Norberg was not a
> party to the contract between Penny Newman
> and Midwest, never sent any employees to
> California or to the Stockton Facility, and
> did not participate in the subject paint job.

Midwest argues that Norberg's reliance on *Scott* "is

misguided and makes no sense."  Midwest contends:

> Here the underlying action '*arose out of*'
> NORBERG's sale of the wrong paint and its
> related misrepresentations to MIDWEST about
> the suitability of that paint.  NORBERG does
> not dispute that it knew the paint products
> MIDWEST purchased were for use <u>in California</u>,
> nor can it do so given it was responsible for
> arranging delivery of the paint for their
> arrival at the California job site.  And any

22

> doubt as to its knowledge is eliminated by
> the facts showing that it was later contacted
> with respect to giving further advice when
> problems later arose <u>in California</u> and it
> received a sample of the failed paint <u>from
> California</u>.  Notwithstanding the fact that
> NORBERG's misconduct arguably occurred
> outside of California, it is undisputed that
> the consequences of its actions were felt and
> suffered within California by PENNY NEWMAN
> and MIDWEST.

In reply, Norberg contends that this factor is not satisfied because the factor is premised on some conduct by the defendant that occurs in the forum state:

> In situations where a defendant *has* engaged
> in forum-related activity but the alleged
> harm does not arise directly from these
> activities, the Ninth Circuit has adopted a
> 'but for' test to analyze whether a causal
> connection exists between those activities
> and the eventual harm.  *Shute v. Carnival
> Cruise Lines*, 897 F.2d 377 (9th Cir.1990),
> rev'd on other grounds 499 U.S. 585 (1991).
> Although the 'but for' test allows for a more
> attenuated causal chain, it expressly
> 'preserves the requirement that there be some
> nexus between the cause of action and the
> *defendant's activities in the forum.*"  *Shute*,
> at 385 (emphasis added).  Here, Midwest
> concedes that Norberg's alleged 'misconduct'
> occurred outside of California ... Thus, the
> test is inapplicable because there is no
> California-related starting point for
> analysis of whether Midwest's harm would not
> have occurred 'but for' Norberg's these
> activities [sic].

Again, this is a close question.  However, the evidence presented by Midwest indicates that all of Norberg's alleged misrepresentations were made to Midwest in South Dakota.  Norberg did nothing in California.  Norberg did not ship the paint to California and never traveled to California.  Midwest sent the

23

samples of the existing paint to Norberg in South Dakota and from there Norberg allegedly made representations to Midwest about the appropriateness and proper application of the paint. Nonetheless, Midwest's claim against Norberg arises out of Norberg's forum-related activities, i.e., its sale of paint to Midwest for a job Norberg knew was in California and the alleged misrepresentations by Norberg made during that job about the suitability of the paint for the application in California and the proper method to use the paint.  Midwest has established the "but for" prong of the specific jurisdiction test.

### 3. Exercise of Jurisdiction Unreasonable.

The third factor is whether the exercise of specific jurisdiction over the defendant would be unreasonable.

"For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.' ... '[W]here a defendant who purposefully had directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998).  In addressing the reasonableness of the exercise of jurisdiction, seven factors are considered:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the

controversy; (6) the importance of the forum
to the plaintiff's interest in convenient and
effective relief; and (7) the existence of an
alternative forum.

*Id.* No one factor is dispositive; a court must balance all
seven. *Id.*

### a. Degree of Interjection

"'Even if there is sufficient "interjection" into the state
to satisfy the purposeful availment prong, the degree of
interjection is a factor to be weighed in assessing the overall
reasonableness of jurisdiction under the reasonableness prong.'"
*Panavision*, 141 F.3d at 1323.

Norberg argues that its degree of purposeful interjection in
California is "nil."  It was not a party to the Penny Newman
contract, it never visited California or the Stockton Facility
and did not participate in the painting job.  Despite its
knowledge that the paint was to be used in California, it had no
continuing obligations or operations in California, does not do
business there and owns no property there.

Midwest argues that Norberg's purposeful interjection
through the effects of its actions on Penny Newman and Midwest
has been established.  The fact that Norberg was not a party to
the painting contract is misplaced because of Midwest's
allegations of negligent misrepresentation.  That Norberg did not
visit California is irrelevant because Norberg had its agent, a
Glidden paint representative, arrive at the Stockton Facility.
*See Ochoa v. J.B. Martin and Sons Farms, Inc.*, 287 F.3d 1182,

25

1189 (9th Cir.2002)("If Ramey was acting as Martin Farms' agent in [directing its recruiting activities towards Arizona], Ramey's activities suffice to provide specific jurisdiction over Martin Farms.").

The degree of interjection is slight.  As discussed, all of Norberg's actions took place in South Dakota.  That Glidden, the paint manufacturer, traveled to California to inspect the job, does not undermine this fact, especially when there is no evidence that Glidden was the agent of Norberg.

> b.  <u>Burden on Norberg</u>.

Norberg asserts that the burden on it will be extreme.  It only has six employees, depositions and hearings in California will disrupt the day to day operations of the store and create scheduling conflicts, appearances in California will require at least two days of travel, and the absence of key employees will have an adverse effect on Norberg's sales and income.

Midwest argues that "[t]his era of modern transportation, email, fax machines, and discount air travel has made it much less burdensome for a party to defend itself in a different forum and it will not be unfair to subject it to the burdens of litigating in a different forum for disputes relating to the foreign forum's business activity.  Midwest contends that depositions of Norberg employees may be taken by telephone or other remote electronic means by stipulation.  Further, Midwest contends, the burden on Norberg is minimized by the fact "despite the apparent conflict of interest", Norberg is represented by

1  that same counsel representing Glidden.

2      The burden on Norberg, a small corporation, in litigating

3  this action in California outweighs the availability of

4  electronic communication.  The fact that Norberg is represented

5  by the same attorney representing Glidden does not diminish the

6  burden on Norberg.

7              c.  <u>Conflict with South Dakota Law</u>.

8      Neither party discusses this factor.  This factor is neutral

9  in resolving whether the exercise of personal jurisdiction over

10  Norberg is reasonable.

11              d.  <u>California's Interest</u>.

12      Norberg argues that California has no interest in the

13  resolution of Midwest's claims against Norberg: "Norberg and

14  Midwest are South Dakota companies, the allegations against

15  Norberg stem from events that occurred in South Dakota and the

16  potential harm Midwest may face will also occur in South Dakota."

17  The fact that Midwest is not a California resident, Norberg

18  contends, only heightens the unreasonableness of imposing

19  jurisdiction over Norberg.

20      Midwest argues that California has a definite interest in

21  protecting the property and persons from harm caused by negligent

22  misrepresentations.  While California has a interest in the

23  dispute between Penny Newman and Midwest, it has little interest

24  in the indemnity dispute between Midwest and Norberg, neither of

25  which is a California resident.

26              e.  <u>Most Efficient Forum, Importance of Forum and</u>

**Existence of Alternative Forum**.

Norberg argues that South Dakota is the most efficient forum for resolving Midwest's claims against it, noting that both Norberg and Midwest are from South Dakota and that South Dakota recognizes the tort of negligent misrepresentation and has a statute covering contribution.

Midwest responds that California is the most efficient forum, arguing that resolution in this forum will result in full and complete resolution of this matter and will avoid the possibility of inconsistent verdicts.

At the hearing, the Court was informed that Norberg has filed a collection action against Midwest arising from this paint sale in the South Dakota state court and that Midwest has filed a cross-complaint in that action against Norberg alleging the same allegations set forth in this federal action.  This pending parallel action renders hollow Midwest's concerns about inconsistent verdicts if personal jurisdiction over Norberg is not found.  Further, Penny Newman, who is the only California resident in this action, has not sued Norberg.

These factors weigh against the exercise of personal jurisdiction.  Norberg has carried its burden of establishing that the exercise of personal jurisdiction over it will be unreasonable.[1]

---

[1]Midwest, citing *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 n. 2 (9th Cir.1977), argues that resolution of personal jurisdiction over Norberg should be deferred until resolution of the action on the merits.  Midwest asserts:

**CONCLUSION**

For the reasons set forth above:

1.   Third-Party Defendant Norberg Paints, Inc's motion to dismiss Midwest Paint Services, Inc.'s Amended Third Party Complaint pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure is GRANTED.

2.   Counsel for Norberg Paints, Inc. shall prepare and lodge a form of order setting forth the ruling in this Memorandum Decision within five (5) court days following the date of service of this decision.

---

> The nature and extent of NORBERG's involvement, namely the representations made to MIDWEST and others about the paint products, are key to the underlying merits of the negligent misrepresentation cause of action.   The parties have not undergone initial disclosure under Federal Rule of Civil Procedure, Rule 26, nor have they conducted any discovery in this case.   At the very least, MIDWEST would request that this Court would defer ruling on this motion with intertwines both procedural and substantive issues so as to allow the merits of the case to be developed through discovery.   MIDWEST discovery will involve the method of NORBERG's paint sales, the volume of sales to California or from other California customers besides MIDWEST, and other points it believes will establish the merits of the case as they are enmeshed with the jurisdictional arguments raised by NORBERG.

However, Midwest concedes that there is no basis for general personal jurisdiction in California.   Midwest's proposed discovery will not assist the court in determining whether specific personal jurisdiction exists.   Further, unlike *Data Disc*, where there were conflicts in the declarations, here the basic averments are not disputed and do not demonstrate that the jurisdictional facts are enmeshed with the facts underlying Midwest's claim for negligent misrepresentation.

29

IT IS SO ORDERED.

**Dated:**    **December 18, 2007**                   **/s/ Oliver W. Wanger**
                                                    UNITED STATES DISTRICT JUDGE